FILED 5 MAY '20 13:08USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:20-cr-__147 SI__ |
| v. | INDICTMENT |
| NELSON SCOTT GILLIS, | 18 U.S.C. §§ 1014, 1344, 1349 |
| Defendant. | Forfeiture Allegation |

THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

1. **NELSON SCOTT GILLIS** ("GILLIS"), defendant herein, was Chief Operating Officer and Chief Financial Officer of Aequitas Capital Management, Inc., and its principal subsidiary, Aequitas Commercial Finance, LLC ("ACF"), and managed those entities along with several other Aequitas-related companies (collectively "Aequitas"). The Aequitas companies were located in Lake Oswego, Oregon.

2. Aequitas created and operated investment funds that purchased trade receivables in health care and other consumer credit areas. To purchase such trade receivables (and for other purposes it fraudulently concealed), Aequitas solicited investors through the issuance of promissory notes, including short-term, high-interest promissory notes issued through the ACF Private Note program.

**Indictment**                                                                                      **Page 1**
                                                                                  Revised April 2018

3.  As chief financial officer at Aequitas, **GILLIS** received notice of, and normally approved, all outgoing payments for Private Note redemptions.

4.  On or about January 7, 2016, **GILLIS** learned that ACF was overdue in redeeming more than $10 million in promissory notes that ACF had issued through the Private Note program. **GILLIS** also learned that ACF had deferred redemption payments for all of the overdue notes at least until January 11, 2016. Before then, according to the information **GILLIS** received, ACF would be in default on at least $2.86 million in outstanding promissory notes.

5.  No Private Note redemptions were paid after January 7, 2016.

6.  Aequitas also borrowed funds directly from financial institutions to purchase trade receivables. One of these financial institutions was Wells Fargo Bank, N.A. ("Wells Fargo"), whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

7.  Aequitas and Wells Fargo entered into a Receivables Loan Agreement ("RLA") on or about January 12, 2015. In effect, the RLA established a $100 million line of credit on which Aequitas could draw to purchase trade receivables if Aequitas certified that it was not in default, or potential default, as to certain conditions. Among these conditions were:

   a.  ACF had not defaulted on payments due to any other creditors in relation to loans worth more than $2.5 million in total outstanding principal;

   b.  ACF was not required to register as an "investment company" under the Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder ("the 1940 Act"); and

   c.  ACF delivered by July 31, 2015, an opinion letter from outside legal counsel confirming that ACF was not required to register as an "investment company" under the 1940 Act.

**Indictment**             **Page 2**

On or about June 30, 2015, **GILLIS** signed an amended version of the RLA on behalf of Aequitas, but the foregoing requirements remained in full force and effect.

8. Sidley Austin LLP served as outside legal counsel to Aequitas. In order to conclude that ACF was not required to register as an "investment company" under the 1940 Act, Sidley Austin LLP informed **GILLIS** that ACF could not hold non-qualifying assets worth more, collectively, than 45% of the total value of ACF's assets.

9. **GILLIS** understood that ACF's largest single asset, a loan to Aequitas Holdings, LLC (the "Holdings Note"), was a non-qualifying asset for purposes of the 1940 Act. ACF valued the Holdings Note at not less than $140 million. With that valuation, more than 51% of ACF's assets, by value, were non-qualifying assets, requiring ACF to register as an "investment company" under the 1940 Act.

## COUNT 1
### (Bank Fraud)
### (18 U.S.C. § 1344)

10. The allegations in paragraphs one through nine of this Indictment are re-alleged and incorporated herein.

11. From not later than July 28, 2015, and continuing through at least January 15, 2016, defendant **NELSON SCOTT GILLIS** knowingly and willfully devised and intended to devise a material scheme to defraud Wells Fargo, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

/ / /

/ / /

/ / /

/ / /

## SCHEME AND ARTIFICE TO DEFRAUD

It was part of the scheme that:

12. **GILLIS** fraudulently procured from Aequitas's outside counsel, Sidley Austin LLP, an opinion that ACF was not required to register as an "investment company" under the 1940 Act by materially misrepresenting the value of non-qualifying assets held by ACF. Specifically, on July 28, 2015, **GILLIS** signed a certificate for Sidley Austin LLP, warranting that at least 55% of ACF's total assets were qualifying assets (and thus not more than 45% of ACF's assets were non-qualifying assets). For purposes of this certificate, **GILLIS** deemed the value of the Holdings Note to be approximately $65 million. This value was less than half the value ACF assigned to the Holdings Note for all other purposes, including the second-quarter financial reports that ACF submitted to Wells Fargo.

13. **GILLIS** then caused Sidley Austin LLP to deliver to Wells Fargo a letter, also dated July 28, 2015, conveying the fraudulently procured opinion that ACF was not required to register as an "investment company" under the 1940 Act.

14. On or about January 15, 2016, **GILLIS** signed and caused to be submitted to Wells Fargo an "Advance Notice," requesting that Wells Fargo advance $4.2 million to Aequitas under the terms of the RLA. As part of this "Advance Notice," **GILLIS** certified, among other things, that "[n]o Potential Event of Default or Event of Default has occurred and is continuing."

## EXECUTION OF SCHEME AND ARTIFICE TO DEFRAUD

15. From not later than July 28, 2015, and continuing through at least January 15, 2016, in the District of Oregon and elsewhere, **NELSON SCOTT GILLIS** knowingly and willfully executed and attempted to execute the above-described material scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses and representations,

moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of Wells Fargo Bank, N.A., a federally insured financial institution.

All in violation of Title 18, United States Code, Section 1344.

## COUNT 2
### (Conspiracy to Commit Bank Fraud)
### (18 U.S.C. § 1349)

16. The allegations in paragraphs one through nine and eleven through fifteen of this Indictment are re-alleged and incorporated herein.

17. From not later than July 28, 2015, and continuing through at least January 15, 2016, in the District of Oregon and elsewhere, **NELSON SCOTT GILLIS**, defendant herein, and other unnamed coconspirators known and unknown to the grand jury did conspire, confederate and agree with each other to commit the offense of bank fraud as charged in Count 1 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 3
### (False Statement on Loan Application)
### (18 U.S.C. § 1014)

18. The allegations in paragraphs one through nine and twelve through fourteen of this Indictment are re-alleged and incorporated herein.

19. On or about January 15, 2016, in the District of Oregon, defendant **NELSON SCOTT GILLIS** knowingly made a false statement for the purpose of influencing the action of Wells Fargo, a federally insured financial institution, in connection with an application for an advance of $4.2 million, in that **GILLIS** certified, among other things, that "[n]o Potential Event of Default or Event of Default has occurred and is continuing," when in truth and in fact, as **GILLIS** well knew, ACF had already defaulted on more than $2.5 million in principal

repayments to holders of Private Notes and expected to default on millions more in the coming weeks.

All in violation of Title 18, United States Code, Section 1014.

## FORFEITURE ALLEGATION

1. The allegations contained in Counts 1 through 3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2. Upon conviction of any offense charged in this Indictment, the defendant, **NELSON SCOTT GILLIS**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, a money judgment in an amount of up to $4,200,000.

3. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

///

///

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c)

All pursuant to 18 U.S.C. § 982(a)(2)(A) and 28 U.S.C. § 2461(c).

Dated: May 5, 2020

A TRUE BILL.

███████████████

OFFICIATING FOREPERSON

Presented by:

BILLY J. WILLIAMS
United States Attorney

*/s/ signature*

SCOTT E. BRADFORD, OSB #062824
RYAN W. BOUNDS, OSB #00012
Assistant United States Attorneys